## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| JAMOHN A. NEAL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Action No. 1:16-11365** |
| | ) | |
| FCI MCDOWELL, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 24), filed on February 27, 2017; and (2) Plaintiff's "Motion to Appeal Under the Accident Compensation Act [IACA] 18 U.S.C. § 4126(c)(4)" (Document No. 31), filed on June 15, 2017. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4ᵗʰ Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 26.) Plaintiff filed his Response in Opposition on March 8, 2017. (Document No. 27.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" should granted and Plaintiff's "Motion to Appeal Under the Accident Compensation Act [IACA] 18 U.S.C. § 4126(c)(4)" should be denied.

### FACTUAL AND PROCEDURAL HISTORY

On November 28, 2016, Plaintiff, acting *pro se*, filed his Application to Proceed Without

Prepayment of Fees and Costs and his Complaint claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document Nos. 1 and 4.) In his Complaint, Plaintiff names the following as Defendants: (1) FCI McDowell; (2) Mr. Goode, Physician Assistant ["P.A."] at FCI McDowell;[2] and (3) Officer Lambeth. (Document No. 4.) Plaintiff alleges that he was injured while working in the welding shop at FCI McDowell on August 18, 2016. (<u>Id.</u>, p. 4.) Plaintiff states that 34 sheets of metal weighing approximately 80 pounds per sheet fell on him and another inmate. (<u>Id.</u>) Plaintiff alleges that the both of his legs were pinned under the sheets of metal. (<u>Id.</u>) Plaintiff claims that the sheets of metal "knocked off the skin on the shin bone" of both legs. (<u>Id.</u>) Plaintiff alleges that it took approximately three minutes before someone showed up to help Plaintiff and the other inmate. (<u>Id.</u>) Plaintiff complains that after waiting approximately one hour, Officer Lambeth "made us come into the garage so that they could do their accident report before taking us to see medical doctor [P.A.] Goode." (<u>Id.</u>) Plaintiff states that he had to wait another 45 minutes to be evaluated by P.A. Goode. (<u>Id.</u>) Plaintiff complains that P.A. Goode "did not take [me] to the hospital at all that day, he just gave me a band aid and sent me on my way." (<u>Id.</u>) Plaintiff states that he is still experiencing sharp pain in both knees, his lower back, and his hip. (<u>Id.</u>) Plaintiff complains that P.A. Goode instructed Plaintiff to buy Ibuprofen from the commissary. (<u>Id.</u>) Plaintiff, however, claims that Ibuprofen is inadequate

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2]  Plaintiff incorrectly refers to Mr. Goode as "AP" Goode instead of P.A. Goode.

to control his pain. (Id.) Plaintiff further alleges that the "boss" of the welding shop, Officer Lambeth, was negligent in failing to provide a safe work environment. (Id.) Plaintiff explains that Officer Lambeth was negligent because the "connext box was unsafe at the time of the accident." (Id., pp. 5 – 6.) As relief, Plaintiff requests that the "connext box" be made safer and that he be awarded damages in the amount of $175,000. (Id., p. 6.)

By Order entered on November 29, 2016, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 6.) On February 27, 2017, Defendants filed their "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 24 and 25.) First, Defendants argue that Plaintiff's FTCA claim should be dismissed based on the following: (1) "The Inmate Accident Compensation Act provides the exclusive remedy for Plaintiff's injuries and the medical treatment of his injuries" (Document No. 25, pp. 6 – 8.); and (2) "Plaintiff's FTCA claim was not exhausted" (Id., pp. 8 – 9.). Second, Defendants argue that Plaintiff's Bivens claim should be dismissed based on the following: (1) "FCI McDowell is not a proper Defendant" (Id., p. 9.); (2) "Plaintiff failed to exhaust his administrative remedies" (Id., pp. 10 – 12.); (3) "Plaintiff cannot establish an Eighth Amendment violation" (Id., pp. 12 – 17.); and (4) "Defendant Goode is entitled to qualified immunity" (Id., pp. 17 – 18.).

As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 24-1.); (2) A copy of Plaintiff's Administrative Remedy History (Document No. 30-1.); (3) The Declaration of William Goode (Document No. 24-2.); and (4) A copy of Plaintiff's relevant medical records (Document No. 24-3.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to

Plaintiff on February 28, 2017, advising him of the right to file a response to the Defendants'

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 26.)

On March 8, 2017, Plaintiff filed his Response in Opposition. (Document No. 27.) On March 16,

2017, and May 12, 2017, Plaintiff filed additional Exhibits in Support. (Document Nos. 28 and

29.) Specifically, Plaintiff filed the following: (1) A copy of Plaintiff's Discharge Summary

showing that he was prescribed Naprosyn 500 mg and Tramadol 50 mg on February 9, 2017

(Document No. 28, p. 2.); and (2) A copy of Plaintiff's "Account Status" from EMP of

Mecklenburg County, PLLC exhibiting that Plaintiff was evaluated on January 16, 2017, February

9, 2017, and March 12, 2017 (Id., pp. 3 – 4 and Document No. 29.).

## FACTUAL HISTORY

On August 18, 2016, Plaintiff was injured while working at his prison job moving some

sheet metal. (Document No. 24-3, p. 2.) Plaintiff was examined by P.A. William Goode, who noted

that Plaintiff had a small abrasion to his left lower leg with no bleeding. (Id., pp. 3 - 5.) P.A. Goode

instructed Plaintiff to take over-the-counter pain medication and to return to sick call if his

condition did not improve. (Id.) On September 1, 2016, Plaintiff reported to Health Services

following an on the job injury to his right wrist. (Id., pp. 6 – 7.) Plaintiff was examined by

Registered Nurse ["R.N."] W. Walters, who noted that Plaintiff had a limited range of motion and

tenderness to his right wrist. (Id.) R.N. Walters further noted that Plaintiff had a healing abrasion

on his left shin from a previous injury of metal falling on his leg. (Id.) R.N. Walters applied an

Ace wrap to Plaintiff's wrist and gave Plaintiff a commissary sheet for Motrin. (Id.)

On September 27, 2016, Plaintiff reported to sick call complaining of bilateral hip and leg

pain for the past several months. (Id., pp. 9 – 11.) Plaintiff indicated that his pain is worse when

he runs three miles. (Id.) Plaintiff further stated that the pain sometimes radiates to his right groin. (Id.) Plaintiff, however, denied any recent injury or taking over-the-counter pain medication. (Id.) Plaintiff was evaluated by P.A. Goode, who noted a full range of motion in his knees and hips. (Id.) P.A. Goode further noted that Plaintiff's quadriceps were tight. (Id.) P.A. Goode ordered x-rays of Plaintiff's bilateral hips and knees, which revealed negative results. (Id., pp. 9 -11, 14 – 15.) P.A. Goode gave Plaintiff a commissary form for over-the-counter pain medication, instructed Plaintiff on proper stretching before running and working out, and instructed Plaintiff to return to medical as needed. (Id., pp. 9 -11.)

On November 9, 2016, Plaintiff reported to sick call complaining of a skin rash on his forearms for approximately two weeks. (Id., pp. 12 – 13.) Plaintiff explained that he worked in the kitchen washing dishes and when soap gets down the rubber gloves, it causes his arms to break out. (Id.) Plaintiff reported no pain. (Id.) Plaintiff was examined by P.A. Goode, who provided skin cream and instructed Plaintiff to return to medical if his condition worsened. (Id.) On January 6, 2017, Plaintiff was transferred from FCI McDowell to a Residential Reentry Center. (Document No. 24-1.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1. **Defendant Lambeth:**

A prior review of the Docket Sheet in the instant case reflected that service had not been effectuated upon Defendant Lambeth. By Order entered on December 12, 2016, the undersigned directed as follows:

> [I]t is hereby **ORDERED** that Plaintiff shall provide the Court with an updated address for Officer Lambeth by **December 30, 2016**. Failure of Plaintiff to provide the Court with an updated address for the above Defendant by December 30, 2016, will result in a recommendation of dismissal of this matter without prejudice as to the above Defendant pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Document No. 13.) Plaintiff has not responded to the Court's above Order.

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia, District Courts possess the inherent power to dismiss an action for a *pro se* Plaintiff's failure to prosecute *sua sponte*.[3] See Link v. Wabash Railroad Co., 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). Rule 41.1 of the Local Rules provides:

---

[3]   Rule 41(b) of the Federal Rules of Civil Procedure provides:

**(b) Involuntary Dismissal: Effect**. If the plaintiff fails to prosecute or to comply with these rules or any order of court, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule - - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - - operates as an adjudication on the merits.

7

**Dismissal of Actions**. When it appears in any pending civil action that the principal issues have been adjudicated or have become moot, or that the parties have shown no interest in further prosecution, the judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown. In the absence of good cause shown within that period of time, the judicial officer may dismiss the action. The clerk shall transmit a copy of any order of dismissal to all counsel and unrepresented parties. This rule does not modify or affect provisions for dismissal of actions under FR Civ P 41 or any other authority.

Although the propriety of a dismissal "depends on the particular circumstances of the case," in determining whether to dismiss a case involuntarily for want of prosecution, the District Court should consider the following four factors:

(i) the degree of personal responsibility of the plaintiff;
(ii) the amount of prejudice caused the defendant,
(iii) the existence of a history of deliberately proceeding in a dilatory fashion, and
(iv) the existence of a sanction less drastic than dismissal.

Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989). In consideration of the first factor, the Court finds that the delays in this case are attributable solely to Plaintiff as Defendant Lambeth has not been required to make an appearance in this action. On November 29, 2016, the Clerk issued process for Officer Lambeth. (Document No. 7.) The Summons, however, was returned un-executed for Officer Lambeth on December 7, 2016. (Document No. 12.) By Order entered on December 12, 2016, the Court notified Plaintiff of the foregoing and directed Plaintiff to provide the Court with accurate address for Officer Lambeth so that proper service could be effectuated.[4]

---

[4] The Summons for Officer Lambeth was issued to the address provided by Plaintiff: FCI McDowell, P.O. Box 1029, Welch, WV 24801. (Document No. 7.) The Docket Sheet, however, reflects that the foregoing is an incorrect address for Officer Lambeth. (Document No. 12.) The undersigned notes that it is Plaintiff's responsibility to provide the Court with the correct address of a Defendant. Although plaintiffs proceeding *in forma pauperis* are entitled to rely upon Court officers or the United States Marshal Service to effect service, "plaintiffs always retain the obligation to provide the process servers with the necessary information

(Document No. 13.) Plaintiff, however, has not responded to the foregoing Order. Plaintiff, therefore, is the sole cause of the delays in this action. With respect to the second factor, the record is void of evidence indicating that the Defendants have been prejudiced by the delays in this case. Concerning the third factor, the record does not indicate that Plaintiff has a history of "deliberately proceeding in a dilatory fashion."

In consideration of the fourth factor, the Court acknowledges that a dismissal under either Rule 41(b) or Local Rule 41.1 is a severe sanction against Plaintiff that should not be invoked lightly. The particular circumstances of this case, however, do not warrant a lesser sanction. An assessment of fines, costs, or damages against Plaintiff would be unjust in view of Plaintiff's status as a *pro se*, indigent litigant. Moreover, explicit warnings of dismissal would be ineffective in view of Plaintiff's failure to respond to the undersigned's Order entered more than seven months ago. (Document No. 13.) In consideration of all factors, the undersigned concludes that dismissal for failure to prosecute is warranted. Accordingly, the undersigned recommends that this action be dismissed without prejudice as to Defendant Lambeth unless Plaintiff is able to show good cause for his failure to prosecute.

**2.    FTCA Claim:**

    **A.    Inmate Accident Compensation Act.**

In their Motion, Defendants argue that the Inmate Accident Compensation Act ["IACA"] "provides the exclusive remedy for Plaintiff's injuries and his medical treatment." (Document No.

---

and to generally make diligent efforts." *Gonzales v. L'Oreal USA, Inc.*, 489 F.Supp.2d 181, 184 (N.D.N.Y. May 24, 2007); *also see Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997); *Heyne v. Mitsubishi Motors North America, Inc.*, 2014 WL 3670953, * 4 (D.Neb. July 23, 2014).

25, pp. 6 – 8.) Defendants assert that Plaintiff "cannot recover under the FTCA for the injuries he sustained while performing his job duties at FCI McDowell." (Id.) Defendants contend "[t]here is no dispute in this case that Plaintiff's injury was a work-related injury." (Id.) Additionally, Defendants assert that "recovery is also barred under the FTCA for the alleged negligent treatment of that injury." (Id.) Accordingly, Defendants argue that Plaintiff's FTCA claim must be dismissed for lack of subject matter jurisdiction because Plaintiff's exclusive remedy is through the IACA. (Id.)

In his Response, Plaintiff argues that his case should not be dismissed. (Document No. 27.) Plaintiff states "five days after my accident, I returned back to work to reconstruct the connext box to put safety guards up for the sheet of metal." (Id.) Plaintiff appears to argue that the foregoing is proof of negligence. (Id.)

The Inmate Accident Compensation Act provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). Federal prisoners, however, cannot recover under the FTCA for work-related injuries as the Prison Industries Fund, 18 U.S.C. § 4126, provides the exclusive remedy for injuries incurred in work-related incidents. See United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Recovery is barred under the FTCA for the work-related injury itself and for the negligent treatment of that injury. Vander v. U.S. Dept. of Justice, 268 F.3d 661 (9th Cir. 2001); also see Cooleen v. Lamanna, 248 Fed. Appx. 357, 362 (3rd Cir. 2007)(finding that a claim brought in connection with subsequent negligence of prisoner doctors, rather than the initial work-related injury, is barred by Section 4126); Wooten v. United States, 825 F.2d 1039, 1044 (6th Cir.

1987)("Section 4126 is also the exclusive remedy when a work-related injury is subsequently aggravated by negligence and malpractice on the part of prison officials."); Thompson v. United States, 495 F.2d 192, 193 (5th Cir. 1974)("Despite the appellant's allegation that the negligence of the hospital worker occasioned further injuries, for which he seeks damages, he is barred from litigating the matter under the [FTCA] since the cause of his original injury was work-related and compensable under 18 U.S.C. § 4126."); Cook v. United States, 2012 WL 5383395 (D.S.C. Nov. 1, 2012), aff'd.,530 Fed.Appx 217 (4th Cir. 2013), cert. denied, ___ U.S. ___, 134 S.Ct. 1292, 188 L.Ed.2d 319 (2014)("The Inmate Accident Compensation Act is also the exclusive remedy for negligent treatment of federal prisoners' work-related injuries."). A "work-related injury" is "defined to include any injury including occupational disease or illness proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). "Work location" is defined by the BOP as "any place that inmate is authorized to be performing his assignment." BOP Program State 1600.09. "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam). Section 4126 not only covers injuries incurred while working in the prison, but includes pre-existing medical conditions that are subsequently injured or exacerbated in work-related incidents. See Vander, supra, 268 F.3d at 664; Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987); Aston, 625 F.2d at 1211. Section 301.301(c), however, provides that "compensation shall not be paid for injuries suffered away from the work location (e.g., while the claimant is going to or leaving work, or going to or coming from lunch outside of the work station or area)." 28 C.F.R. § 301.301(c).

Courts have broadly construed the term "work-related" injury. In Baynes v. United States, 302 Fed.Appx. 334 (6th Cir. 2008), the Sixth Circuit determined that an injury occurring during a

trip to or from a job site, while on-the-clock, was a work-related injury. Baynes, 302 Fed.Appx. at 335-36; also see Payton v. United States, 2011 WL 3240487 (E.D.N.C. July 28, 2011)(although the injury occurred while plaintiff was traveling to lunch, the court concluded the injury was work-related because the injury occurred while plaintiff was still on-the-clock and being paid.) In Wooten v. United States, 437 F.2d 79 (5th Cir. 1971), the Fifth Circuit determined that an inmate suffered a work-related injury where the inmate was injured on the work site while traveling to lunch. Wooten, 437 F.2d at 80(finding inmate suffered a work-related injury while traveling on an elevator on his way to lunch). Courts are generally unwilling to determine that an inmate's injury is work-related absent evidence that the injury occurred during work activities, on the work site, or while the inmate was "on-the-clock." See Goforth v. United States, 2010 WL 3835541 (S.D.W.Va. Sep. 29, 2010)(denying summary judgment where there was "some evidence in the record to support [Plaintiff's] contention" that she was going to her job site at the time of her accident."); Codianni-Robles v. United States, 2005 WL 2098837, * 2 (D.Conn. Aug. 29, 2005)(the District Court denied the government's motion to dismiss finding inadequate evidence that plaintiff's injuries were work-related because "she had finished her work assignment earlier in the day" and a "different inmate was assigned to work at the time of her accident.").

Based upon a review of the record, the undersigned finds that Plaintiff's injuries occurred while he was on the job and the injuries were "work-related." Plaintiff acknowledges that he was injured while working in the welding shop at FCI McDowell on August 18, 2016. (Document No. 4, p. 4.) Plaintiff states that 34 sheets of metal weighing approximately 80 pounds per sheet fell on him. (Id.) Thus, it is undisputed that Plaintiff's injury was "work-related." Accordingly, recovery under the FTCA is not available as the IACA provides the exclusive remedy for injuries incurring

in work-related incidents.[5] Based on the foregoing, the undersigned recommends that the District Court grant the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment."

### B.    Exhaustion of Administrative Remedies.

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning any other FTCA claim, which deprives this Court of subject matter jurisdiction and requires dismissal of any remaining negligence claims. (Document No. 25, pp. 8 - 9.) Specifically, Defendants explain that Plaintiff did not file any administrative tort claims with the agency. (Id.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 24-1.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 1.) Specifically, Ms. Wahl states that "Plaintiff has not filed any administrative tort claims with the BOP." (Id.)

The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[6] See also Bellomy v. United

---

[5]   In the Court's Order granting Plaintiff's Application to Proceed Without Prepayment of Fees, the undersigned advised Plaintiff of the time parameters for filing a claim under the IACA. (Document No. 6, p. 4, fn. 4.)

[6]   Title 28 U.S.C. § 2675(a) provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of

13

States, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993); Gibbs v. United States, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency.[7] See Plyer v. United States, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision.

Plaintiff failed to file a Response disputing that he failed to exhaust his administrative remedies pursuant to the FTCA. (Document No. 27.) To the extent Plaintiff is asserting a negligence claim, the undersigned finds that such a claim is inappropriately exhausted. Plaintiff

---

a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

[7]  The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

fails to produce any documents indicating that he exhausted such a FTCA claim. Furthermore, Plaintiff does not allege that the administrative remedy process was rendered unavailable. To the extent Plaintiff is asserting a negligence claim under the FTCA, the undersigned recommends that Plaintiff's FTCA claim be dismissed for failure to exhaust.

**3.**     <u>**Bivens Claim**</u>**:**

    **A.**     **FCI McDowell is an improper Defendant.**

In Defendants' Motion, FCI McDowell argues that it must be dismissed as an improper Defendant concerning Plaintiff's <u>Biven</u> claim. (Document No. 25, p. 9.) Plaintiff fails to address the above argument in his Response. (Document No. 27.)

Plaintiff is seeking relief for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); <u>See also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an

inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reingold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). Plaintiff improperly names the FCI McDowell as a Defendant. FCI McDowell is not a "person" as required by Bivens. As stated above, federal agencies are not proper defendants under Bivens. Therefore, the undersigned concludes that FCI McDowell should be dismissed as a Defendant.

### B.    Failure to Exhaust.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[8] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison

---

[8] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The

17

rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

18

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, supra, 376 F.3d at 655(internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is

unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning any of his Bivens claims. (Document No. 25, pp. 10 - 12.) Specifically, Defendants explain that Plaintiff failed to exhaust any remedies through the Federal Bureau of Prisons administrative remedy program. (Id.) Although Defendants acknowledge that Plaintiff began the administrative remedy progress concerning his request for follow-up x-rays and an MRI, Defendants contend that Plaintiff initiated the instant action well before exhausting any administrative remedies. (Id.) In support, Defendants submit the Declaration of Ms. Wahl. (Document No. 24-1.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 1.) Specifically, Ms. Wahl states that "Plaintiff has not exhausted any administrative remedies through all levels while in the BOP." (Id.) As an Exhibit, Defendants attach a copy of Plaintiff's Administrative Remedy History. (Document No. 30-1.)

Plaintiff failed to file a Response disputing that he failed to exhaust his administrative remedies. (Document No. 27.) Further, there is no claim that the administrative process was rendered unavailable. Based upon a review of the record, the undersigned finds that Plaintiff began the administrative remedy progress on October 12, 2016, by filing a Request for Administrative Remedy requesting x-rays and an MRI (Remedy ID No. 880449-F1). (Document No. 30-1, p. 3.) Plaintiff's Administrative Remedy Request was rejected due to his failure to request any specific relief. (Id.) Plaintiff refiled his Administrative Remedy Request on November 3, 2016 (Remedy ID No. 880449-F2). (Id.) By Response dated November 9, 2016, the Warden advised Plaintiff that his Request for Administrative Remedy was closed with an explanation. (Id.) Instead of filing his appeal to the Regional Office, Plaintiff filed his Complaint with this Court on November 28, 2016. After initiating this action on November 28, 2016, Plaintiff filed his "Regional Administrative Remedy Appeal" on January 3, 2017 (Remedy ID No. 880449-R1). (Document No. 30-1, p. 3.) Based on the foregoing, the undersigned finds that Plaintiff clearly initiated the instant action prior to fully exhausting the administrative remedy process. Accordingly, the undersigned recommends that Plaintiff's Bivens claim be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Plaintiff's claim.

### C.    No evidence of deliberate indifference by Defendant Goode.

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct.

2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), <u>rev'd on other grounds</u>, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. <u>See</u> <u>Pressly v. Hutto</u>, 816 F.2d 977, 979 (4th Cir. 1987); <u>Moore v. Winebrenner</u>, 927 F.2d 1312, 1316 (4th Cir. 1991) <u>cert. denied</u>, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" <u>Id.</u> at 298, 111 S.Ct. 2321 (citing <u>Rhodes v. Chapman</u>, 452 U.S. at 347, 101 S.Ct. 2392). "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995)(quoting

Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") Therefore, Plaintiff must first allege and eventually establish an objectively "sufficiently serious" deprivation. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that there was a substantial risk to Plaintiff's health or safety and that Defendant disregarded the serious physical consequences.

In his Complaint, Plaintiff appears to conclude that Defendant Goode acted with deliberate indifference in violation of the Eighth Amendment by failing to provide Plaintiff with adequate medical treatment regarding the abrasion on his shin. (Document No. 4.) First, the undersigned finds that Plaintiff cannot satisfy the objective standard because Plaintiff has not alleged a sufficiently serious deprivation. See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life

or permanent disability, or a condition for which lack of treatment causes continuous severe pain. See Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990). In his Complaint, Plaintiff describes his August 18, 2016 injury as the skin being "knocked off" the "shin bone." Accepting Plaintiff's factual allegation as true, Plaintiff has not alleged a sufficiently serious deprivation. Furthermore, a review of the undisputed facts reveal that Plaintiff was examined by PA Goode, who noted only a small abrasion to Plaintiff's left lower leg with no bleeding. Plaintiff failed to report any further complaints of leg pain until September 27, 2016. On September 27, 2016, Plaintiff reported that he had been suffering bilateral hip and leg pain for several months. Plaintiff rated his pain as a 4 on a scale to 10. Thus, there is no indication that Plaintiff was suffering from a serious medical condition or that the allege lack of medical care was causing Plaintiff to suffer from continuous severe pain. Accordingly, Plaintiff's allegation of failure to provide adequate medical care for his leg injury is insufficient to establish a sufficiently serious deprivation under the objective standard.

Notwithstanding the foregoing, the undersigned will consider whether Defendant Goode acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff appears to conclude that Defendant Goode acted with deliberate indifference because Plaintiff had to wait 45 minutes to be evaluated and Defendant Goode "did not take [me] to the hospital at all that day, he just gave me a band aid and sent me on my way." Accepting Plaintiff's factual allegations as true, Plaintiff has not alleged sufficient facts to establish deliberate indifference. Plaintiff's legal conclusion that Defendant Goode acted with deliberate indifference is insufficient. Furthermore, a review of the undisputed facts do not establish deliberate indifference by Defendant Goode. The record is void

24

of any indication that it was medically necessary for Plaintiff to be evaluated sooner by Defendant Goode or transported to a hospital. Plaintiff rated his pain as a 5 on a scale to 10. The record reveals that Plaintiff was examined by Defendant Goode, who noted only a small abrasion to Plaintiff's left lower leg with no bleeding. The record further does not support a finding that Plaintiff was denied appropriate medical treatment for his hip or knee condition. Approximately two weeks after Plaintiff suffered the injury to his left leg, Plaintiff reported to Health Services following a work related injury to his wrist. Plaintiff failed to report any complaints concerning his legs, knees, or hips. Furthermore, R.N. Walters noted that the abrasion to Plaintiff's left shin was healing. On September 27, 2016, Plaintiff reported Health Service complaining that he had been suffering from bilateral hip and leg pain for several months. Plaintiff rated his pain as a 4 on a scale to 10. Plaintiff stated that the pain was worse after running three miles. Plaintiff was evaluated by Defendant Goode, who noted that Plaintiff had a normal gait and a full range of motion in his hips and knees. Defendant Goode ordered bilateral x-rays of Plaintiff's knees and hips, which revealed normal results. Defendant Goode instructed Plaintiff to perform appropriate stretching exercises before working out and provided Plaintiff with a commissary form for over-the-counter pain medication. Plaintiff's medical records do not reveal that Plaintiff reported any further complaints concerning his legs, knees, or hips.

Based upon the foregoing, the undersigned finds no evidence that Defendant Goode or medical staff at FCI McDowell knowingly disregarded Plaintiff's need for treatment concerning his legs, knees, or hips. The record reveals Plaintiff was evaluated and provided treatment following each sick-call request. Further, the record does not support Plaintiff's conclusion that Defendant Goode acted with deliberate indifference by failing to conduct an expedite examination

following Plaintiff's injury on August 18, 2016, or in failing to transfer Plaintiff to an outside hospital for evaluation. There is no indication that Plaintiff's injury required immediate attention or that his injury could not be appropriately treatment by medical staff at FCI McDowell. The record reveals that Defendant Goode made sufficient efforts to diagnose and treat Plaintiff's condition. To the extent Plaintiff complains that Defendant Goode instructed Plaintiff to purchase the over-the-counter pain medication from the commissary, such does not establish deliberate indifference. There is no indication that Plaintiff was denied or unable to purchase the over-the-counter medication. See Bailey v. Carter, 14 Fed.Appx. 245, 250 (6th Cir. 2001)(finding no Eighth Amendment violation where prisoner only complained that he was required to pay for over-the-counter medication and not that he was denied medication). Even assuming Plaintiff was denied or unable to purchase the over-the-counter medication, there is no allegation or indication that Defendant Goode was aware of such and failed to provide the medication to Plaintiff. Plaintiff appears to simply disagree with the appropriate course of treatment. An inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Accordingly, the undersigned finds that Defendant Goode did not act with deliberate indifference in providing medical treatment for

26

Plaintiff's condition. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's <u>Bivens</u> claim.

**4.      Plaintiff's "Motion to Appeal Under the Accident Compensation Act":**

Plaintiff filed a one page document entitled "Motion to Appeal Under the Accident Compensation Act [IACA] 18 U.S.C. § 4126(c)(4)." (Document No. 31.) Plaintiff fails to make any statements in support of his Motion. The undersigned notes that IACA provides the exclusive remedy for injuries incurring in work-related incidents. A claim for inmate accident compensation is initially determined by a Claims Examiner. 28 C.F.R. § 301.305. If an individual is wishes to challenge the Claims Examiner's decision, IACA provides as follows:

> Any claimant not satisfied with any decision of the Claims Examiner concerning the amount or right to compensation shall, upon written request made within 30 days after the date of issuance of such determination, or up to 30 days thereafter upon a showing of reasonable cause, be afforded an opportunity for either an in-person hearing before the Committee, or Committee reconsideration of the decision. A claimant may request an in-person hearing or reconsideration by writing to the Inmate Accident Compensation Committee, Federal Bureau of Prisons, 320 First Street NW, Washington, DC 20534.

28 C.F.R. § 301.306(b). To the extent Plaintiff disputes the Claims Examiner's decision, Plaintiff should have administratively appealed the determination. An "appeal" to this Court is inappropriate. Accordingly, the undersigned respectfully recommends that Plaintiff's "Motion to Appeal Under the Accident Compensation Act [IACA] 18 U.S.C. § 4126(c)(4)" (Document No. 31) to denied.

### PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 24),

**DENY** Plaintiff's "Motion to Appeal Under the Accident Compensation Act [IACA] 18 U.S.C. § 4126(c)(4)" (Document No. 31), **DISMISS** Plaintiff's Complaint (Document No. 4) with prejudice as to FCI McDowell and Defendant Goode, **DISMISS** Plaintiff's Complaint (Document No. 4) without prejudice as to Defendant Lambeth, and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 20, 2017.

Omar J. Aboulhosn
United States Magistrate Judge